**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
**physically received in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**APRIL 21, 2026**

# In the Court of Appeals of Georgia

A26A0095. BRIDGES v. GUPTA.

PADGETT, Judge.

Ronney E. Jones ("Plaintiff's Counsel") appeals from an attorney fees order entered in this medical malpractice case. The trial court awarded attorney fees to Dr. Akshay Gupta and Atlanta Heart Associates, P.C. (the "Defendants") under both OCGA §§ 9-15-14(b) and 9-11-37(d). Plaintiff's Counsel argues that the trial court abused its discretion in awarding the fees. We agree, and therefore vacate the attorney fees order and remand the matter to the trial court.

Annie Bridges ("Bridges") had a documented heart problem that required the installation of a pacemaker in 2012. The pacemaker was wirelessly connected to a

monitor that was installed in her home and periodically reported back to her treating physician, Dr. Gupta. On April 15, 2016, Dr. Gupta received a report transmitted by the pacemaker monitor which showed that Bridges experienced high ventricular rates for a short period of time on April 9, 2016. Dr. Gupta noted the event and classified it as benign. Bridges passed away on May 8, 2016, and her cause of death was listed by the coroner as organic heart disease. No autopsy or toxicology testing was conducted.

Bridges' spouse, individually and on behalf of Bridges' estate ( "Plaintiff"), brought a professional negligence action against Dr. Gupta and his medical practice in June 2017. Both Dr. Gupta and his medical practice denied the allegations of negligence within the complaint. The parties exchanged discovery and, during the pendency of the litigation, neither party sought a motion to compel or a protective order. A jury trial was conducted in August 2023, and the jury returned a verdict in favor of Dr. Gupta and the medical practice.

The discovery requests made by the lawyers representing Dr. Gupta and his medical practice ("Defense Counsel") included both interrogatories and requests for production of documents. Pursuant to two interrogatories and three requests for production, Plaintiff was required to produce documentation supporting every

allegation of negligence, medical records related to the alleged negligence, and any radiological films or other illustrative material depicting the alleged negligence. Additionally, one of the interrogatories asked whether there existed any "radiological films, or other illustrative material depicting any person, thing[,] or occurrence relevant to any issue in this lawsuit, directly or indirectly."[1] One of the requests for production sought "[a]ll photographs, drawings, pictures, movies, radiological film, videotapes, or other illustrative material depicting any person, thing, or occurrence relevant to any issue in this lawsuit, either directly or indirectly."

On August 31, 2023, the week after the verdict, Plaintiff's Counsel sent a letter to Defense Counsel, noting that he intended to file a motion for new trial. In that letter, Plaintiff's Counsel described the ground upon which he maintained a new trial should be granted and included the following paragraph:

> Once a new trial is granted …, there will be new evidence introduced. As the attached exhibit shows, Abbott Labs produced a post-morteum [sic] analysis of [Bridges'] pacemaker. It shows that on the night of her death, … Bridges experienced a 14 second long episode of atrial

---

[1] The responses made to the discovery requests are not a part of the record.

fibrillation. She had atrial rates of 300 bpm. Then her heart stopped.
She died of cardiac arrest due to atrial fibrillation.

The letter concluded with an inquiry about potential settlement. Attached to the letter was a report from the manufacturer of the pacemaker ("post-mortem report"), dated March 20, 2019, which showed that on May 7, 2016, at 10:00 p.m., just a few hours before Bridges passed away, she experienced an "atrial high-rate episode" for approximately 8 seconds.

Throughout discovery, Plaintiff's Counsel never revealed in response to any interrogatories or requests for production that he was in possession of a report from the pacemaker manufacturer for any period of time after April 15, 2016. Defense Counsel had sent a third party request for production to the manufacturer of the pacemaker in March 2018, but the manufacturer's response did not include any information about the post-mortem report as it had not yet been created. While the litigation was pending, Plaintiff's Counsel had Bridges' body exhumed, the pacemaker removed and sent the pacemaker to the manufacturer, which then prepared the post-mortem report. The post-mortem report showed Bridges' heart activity on May 7, 2016, but contained no information about her heart activity on May 8, 2016, the day she passed away. Defense Counsel was not aware of the exhumation or any additional analysis of the pacemaker.

4

Following receipt of Plaintiff's Counsel's letter, the Defendants filed a motion for attorney fees and expenses of litigation under OCGA § 9-15-14(b) in October 2023. A hearing was conducted on the motion on December 18, 2023. At the conclusion of the hearing, the trial court reserved ruling. On January 19, 2024, Defendants filed an amended motion for attorney fees which added a claim for attorney fees under OCGA § 9-11-37. Plaintiff's Counsel filed a written response to the amended motion for attorney fees, arguing that the amended request was untimely as it was brought after the hearing, and further claiming that the post-mortem report constituted attorney work product.[2] However, Plaintiff's Counsel's response did not request any further hearing.

In February 2025, the trial court issued a written order awarding attorney fees under both OCGA §§ 9-15-14(b) and 9-11-37(d) against Plaintiff's Counsel in the amount of $123,740.62, which was exactly one-half of the amount of attorney fees

---

[2] The trial court rightfully rejected claims that the post-mortem report constituted attorney work product. Plaintiff's Counsel extensively argued this point during the December 2023 hearing. In order to claim a privilege under these facts, Plaintiff's Counsel was under a duty to disclose the existence of the report and make a claim of privilege when he supplemented his initial responses to discovery. *Anglin v. Smith*, 346 Ga. App. 456, 462 n.5 (816 SE2d 426) (2018). Plaintiff made no such argument in the briefing before this Court and, therefore, it has been abandoned. *BB&T Ins. Servs. v. Renno*, 361 Ga. App. 415, 417 n.3 (864 SE2d 608) (2021).

5

sought by Defense Counsel. The trial court found that by failing to produce the post-mortem report, Plaintiff's Counsel "unnecessarily expanded the proceeding by abuses of discovery procedures. Due to these intentional actions by [Plaintiff's Counsel], Defendants incurred additional attorney[ ] fees and expenses of litigation." The order also concluded that Plaintiff's Counsel's failure to provide the post-mortem report in response to discovery requests lacked substantial justification. Plaintiff's Counsel now appeals from that award, claiming that the trial court abused its discretion in awarding attorney fees under OCGA §§ 9-11-37(d) and 9-15-14(b).

Generally, an award of attorney fees is not available in Georgia unless such award is authorized by statute or contract. *Gordon v. Abrahams*, 330 Ga. App. 795, 799(3)(b) (769 SE2d 544) (2015). An award of attorney fees was generally not authorized by common law which demands strict construction of any statute that allows for an award of attorney fees. *NRD Partners II, LP v. Quadre Invs., L.P.*, 364 Ga. App. 739, 741(2) (875 SE2d 895) (2022) (principle applicable to awards made under OCGA § 9-11-37); *Podlin v. Cichowski*, 375 Ga. App. 481, 485(2) (915 SE2d 662) (2025) (principle applicable to awards made under OCGA § 9-15-14).

Under OCGA § 9-11-37, a trial court has broad discretion to control discovery, including the imposition of sanctions. *Blount v. Blount*, 373 Ga. App. 105, 109(4) (907 SE2d 719) (2024). However, that discretion is not unlimited. *N. Druid Dev., LLC v. Post, Buckley, Schuh & Jernigan, Inc.*, 330 Ga. App. 432, 435(1) (767 SE2d 29) (2014). We will not reverse a trial court's ruling on sanctions under OCGA § 9-11-37 absent an abuse of that discretion which would include the trial court's failure to follow the law. Id. at 434–35.

We likewise review an award of attorney fees under OCGA § 9-15-14(b) for an abuse of discretion. *Reid v. Reid*, 348 Ga. App. 550, 550 (823 SE2d 860) (2019). "Although this standard of review is deferential, it is not toothless. An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." *Doyle v. Haas*, 374 Ga. App. 558, 558 (913 SE2d 437) (2025) (quotation marks omitted). Any award of attorney fees under OCGA § 9-15-14(b) must be limited to those fees incurred due to sanctionable conduct. *City of Albany v. Pait*, 335 Ga. App. 215, 220(4) (780 SE2d 103)

(2015). "Thus, lump sum or unapportioned attorney fee awards are not permitted in Georgia." Id. (quotation marks omitted).[3]

As a preliminary matter, however, we examine whether the trial court was correct in its conclusion that the post-mortem report was responsive to discovery requests and that Plaintiff's Counsel was therefore under a duty to disclose it. Neither party alleges that the discovery abuse entailed Plaintiff completely failing to respond to the initial discovery requests in this case. Instead, Plaintiff's Counsel argues that the report was not responsive because the it reflects Bridges' heart activity on the evening prior to her death and was never made available to her doctors; as such, Plaintiff's Counsel contends the report was not relevant to any claim that her treating physicians were negligent. On the other hand, Defense Counsel alleges that the report was highly relevant because Plaintiff's theory of the case was that Bridges died from prolonged ventricular tachycardia that deteriorated into ventricular fibrillation, and the post-mortem report shows no evidence of

---

[3] Although the two statutes cited by the trial court allow for an award of attorney fees based upon discovery abuses and we review awards under each statute by the same deferential standard, as we address, infra, the proof required, the attendant procedure, and the findings required to support an award under each statute are different.

ventricular issues, only atrial fibrillation. Stated another way, Defense Counsel argues that while the post-mortem report may not have been relevant to alleged negligence by Dr. Gupta or his medical practice, it was highly relevant to the proceedings. Defense Counsel maintains that the post-mortem report arguably disputed Plaintiff's theory of the case in that it did not reveal any ventricular problems in the twelve hours leading up to Annie's death, and while it may not have been relevant to establish negligence, it was highly relevant in disproving negligence. Therefore, Defense Counsel argues that Plaintiff's Counsel was under a duty to supplement responses to discovery under OCGA § 9-11-26(e)(2)(B) and his failure to do so unnecessarily expanded the litigation. See *Omni Healthcare, LLC v. Stacy Young Excavation, Inc.*, 377 Ga. App. 85, 90(3) (921 SE2d 508) (2025) (in the discovery context, relevance is interpreted "very broadly" to encompass anything that "is or may become an issue in the litigation").

We agree with the trial court that the report was clearly responsive to one or more discovery requests made by Defense Counsel.[4] Plaintiff's Counsel thus had a duty to supplement prior discovery responses to include the report once it came into

---

[4] Plaintiff's Counsel contends that he did not receive the Post-mortem Report until March 20, 2019.

his possession. See OCGA § 9-11-26(e)(2)(B). The report was relevant to events and/or issues in the lawsuit. It should have been disclosed. See *Anglin v. Smith*, 346 Ga. App. 456, 461–62(2) (816 SE2d 426) (2018) (a lawyer has a duty to supplement responses to interrogatories if the response was true when made but information acquired later shows that the response previously made is no longer true).

We now turn to the propriety of the trial court's award of attorney fees based upon Plaintiff's Counsel's failure to comply with his discovery obligations.

1. With respect to Plaintiff's Counsel's claim that the trial court erred in awarding under OCGA § 9-11-37(d), trial courts typically are authorized under OCGA § 9-11-37(d) to award reasonable attorney fees and expenses against the party, the attorney advising the party, or both, where the party fails to serve answers or objections to interrogatories. Here, however, the trial court was without jurisdiction to award fees under OCGA § 9-11-37(d).

The trial court entered its attorney fees award on February 7, 2025 — two terms of court after it denied Plaintiff's motion for new trial on July 15, 2024,[5] and

---

[5]  Neither the motion for new trial, nor the trial court's order denying the motion are included in the record. Plaintiff's Counsel represents in his appellant's brief that the trial court denied the motion on July 15, 2024.

well past Plaintiff's deadline to appeal the judgment. See OCGA § 15-6-3(18) ("The terms of court for [the Superior Court of Henry County] shall commence as follows: Fourth Monday in January, April, and October and second Monday in July."); OCGA § 5-6-38(a) (a notice of appeal must be filed within 30 days of entry of the judgment or the trial court order sought to be appealed). That is, at the time the trial court entered the attorney fees award, there was nothing pending in the trial court but Defendants' motion for attorney fees and the trial court's subsequent award under OCGA § 9-11-37(d) was a nullity. See *C & S Indus. Supply Co., Inc. v. Proctor & Gamble Paper Products Co.*, 199 Ga. App. 197, 198 (404 SE2d 346) (1991) (after the appellant voluntarily dismissed its complaint, there was nothing pending in the trial court but appellee's motion for sanctions under OCGA § 9-11-37 and the trial court's order pursuant to that motion was a nullity) *Hart v. Redmond Regional Med. Ctr.*, 300 Ga. App. 641, 642 n.6 (686 SE2d 130) (2009) (trial court lacked jurisdiction to render post-dismissal sanction under OCGA § 9-11-37).[6]

---

[6] While the parties do not raise this issue in their briefs, the issue of whether the trial court has subject matter jurisdiction to enter an award of attorney fees is not waivable. See *Trammel v. Clayton County Bd. of El-10 Comm'rs*, 250 Ga. App. 310, 310–11 (551 SE2d 412) (2001) (trial court did not have subject matter jurisdiction to consider untimely attorney fees motion under OCGA § 9-15-14); *Cowart v. Georgia Power Co.*, 354 Ga. App. 748, 752 (841 SE2d 426) (2020) (subject matter jurisdiction can never be waived).

2. The trial court also made the award of attorney fees under the authority of OCGA § 9-15-14(b). As an initial matter, we note that Defense Counsel timely moved for an award of attorney fees under OCGA § 9-15-14(b) on October 20, 2023, within 45 days of final judgment and thus, the trial court retained jurisdiction to consider and rule on the motion. See OCGA § 9-15-14(e); *Hart*, 300 Ga. App. at 643(1). We find that an award of attorney fees under OCGA § 9-15-14(b) was authorized as the trial court found that Plaintiff's Counsel unnecessarily expanded the litigation due to his "abuses of discovery procedures." However, in arriving at an award amount, trial courts are expected to show the complex decision making process necessarily involved in reaching a particular dollar figure. *City of Albany*, 335 Ga. App. at 220(4). And here, that means the trial court's order needed to have articulated why the amount awarded was $123,740.62, as opposed to any other amount. See id.

In its order, however, the trial court awarded exactly one-half of the amount claimed by Defense Counsel, without an explanation of how it reached this award amount. The trial court may have conducted that complex computation anticipated by our law in reaching the award amount that appears in the final order. However, in the absence of evidence of the computation within the order, we must vacate the

12

order in its entirety and remand the case to allow the trial court to conduct the required factfinding relating to the amount of attorney fees, if any, to be assessed under OCGA § 9-15-14(b). See *City of Albany*, 335 Ga. App. at 221(4); *Gibson Law Firm*, 327 Ga. App. at 691(3); *Reid*, 348 Ga. App. at 556(2). Whether additional evidence or argument is necessary to resolve this matter is solely left to the discretion of the trial court.

*Judgment vacated and case remanded with direction. Watkins, J., concurs and McFadden, P. J., concurs specially.*

# In the Court of Appeals of Georgia

A26A0095. BRIDGES v. GUPTA.

MCFADDEN, Presiding Judge, concurring.

I concur fully in the majority opinion. I write separately to unpack the mistake that brought plaintiff's counsel to this pass.

That mistake was analyzing their duty to respond to discovery from the wrong perspective. They analyzed the information sought from the perspective of their own side of the case rather than from the perspective of the party seeking discovery. That mistake led them to formulate a plausible, but ultimately unpersuasive, argument for withholding it.

Generally the duty to disclose requested information applies to "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party," even if it "will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence[.]" OCGA § 9-11-26 (b) (1).